1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10
11

12  THERESA NWANKWERE,

13                      Plaintiff,

14        v.

15  UR M. JADDOU, Director, United States
    Citizenship & Immigration Services,

16
                        Defendant.
17

18  _____/

Case No.  1:22-cv-01212-SKO

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

(Docs. 20, 21)

19        Plaintiff Theresa Nwankwere brings this action challenging the denial of a Petition to

20  Classify Orphan as an Immediate Relative, U.S. Citizenship and Immigration Services (USCIS)

21  Form I-600 (the "Form I-600" or the "Petition"), filed by Plaintiff and her husband on behalf of

22  D.A.C., a child they adopted abroad.[1]  (*See* Doc. 1.)  Pending before the Court are Plaintiff's motion

23  for summary judgment and Defendant's cross motion for summary judgment.  (Docs. 20, 21.)

24  Plaintiff filed an opposition to Defendant's motion on June 1, 2023, and Defendant filed a reply

25  brief on June 22, 2023.  (*See* Docs. 23, 27.)  The Court deemed the matters suitable for decision

26  without oral argument pursuant to Local Rule 230(g) and vacated the hearing set for July 27, 2023.

27  (Doc. 28.)

28

_____
[1] The Court will refer to the child as D.A.C. for purposes of privacy.

For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment, and grants Defendant's cross motion for summary judgment.[2]

## I.     BACKGROUND

**A.     Relevant Factual Background**

Plaintiff is a United States citizen residing in Coracan, California, with her husband. (Administrative Record ("AR") 31, 120, 251, 287, 317.)  In February 2018, Plaintiff and her husband wrote to the Director of the Ministry of Gender Affairs and Social Development, Owerri, Imo State, Nigeria[3] ("the Ministry") expressing their intent to apply for adoption of a baby through the Ministry.  (AR 31.)

On June 6, 2019, the Family Court Unit, Magistrate Court, Owerri Imo State ("the Family Court") issued an order finding that D.A.C., a female child from Love Care Child Centre, an orphanage in Owerri ("Love Care" or "the Orphanage"), should be placed under Plaintiff's and her husband's foster and care "for all good intents and purposes" ("the Foster Order").  (AR 278–79.) The Family Court also directed a Child Development Officer to carry out an investigation to assist the Court in assessing the couple's suitability for an adoption order.  (*Id.*)

On October 9, 2019, upon evaluating Plaintiff's application and the report made by the Child Development Officer and the Ministry, the Family Court issued an adoption order ("the Adoption Order").  (AR 280.)  The Court ordered as follows: the child will be placed for adoption by Plaintiff and her husband; the child shall be known as D.A.C.; the adopters reserved the right to travel with the adoptee to their place of residence in the United States; and the period of three months of consecutive fostering was waived "because of the inconvenience this will cause to the child."  (AR 280–81; *see also* AR 248–52.)

**B.     Procedural Background**

**1.     Plaintiff's Form I-600**

On January 7, 2020, Plaintiff filed a Form I-600 with USCIS seeking to classify D.A.C. as her immediate relative.  (AR 1, 119–32.)  The form indicated D.A.C. was an orphan because she

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge for all purposes.  (*See* Doc. 26.)
[3] Owerri is a town in Imo State within the county of Nigeria.  (*See* AR 121.)

had only one sole or surviving parent who was incapable of providing proper care and who irrevocably released the child for emigration and adoption in writing.  (AR 123.)  The form also listed the date of adoption as October 9, 2019, the date of the Adoption Order.  (AR 124.)

### 2.    USCIS's First Request for Evidence and the U.S. Consulate's I-604 Investigation

On February 11, 2020, USCIS issued its first Request for Evidence ("RFE"), seeking evidence of the following information: (1) irrevocable consent of the sole or surviving parent to release the orphan for emigration and adoption as required by 8 C.F.R. § 204.3(d)(1)(C); (2) that D.A.C. met the definition of an "orphan" as set forth in Section 101(b)(1)(F)(i) of the Immigration and Naturalization Act ("INA"); (3) abandonment by both parents; and (4) that Plaintiff and her husband were present at court at the time of adoption, so there was no proxy adoption.  (AR 235–37.)  USCIS forwarded Plaintiff's case to the U.S. Consulate in Lagos, Nigeria, for the mandatory I-604 Determination on Child for Adoption.[4]  (*See* AR 55, 134.)  Plaintiff timely submitted evidence in response to the first RFE.  (*See* AR 238–63.)

Following an investigation, the U.S. Consulate in Lagos issued a memorandum stating it was unable to conclude that D.A.C.'s claimed origins were legitimate.  (AR 67–74.)  The memorandum concluded as follows:

> Consulate General Lagos is now returning the I-604 as not clearly approvable on the basis that there is no credible evidence that this child is an orphan as defined by under INA § 101(b)(1)(F).  The involvement of [the Director of Love Care, Chief Mrs. Lauretta A. Madu ("the Director")], who has fabricated the origins of an orphan to facilitate international adoption in the past, casts serious doubts onto the legitimacy of this child's origin.  Furthermore, inconsistencies contained within the documentation, including differing explanations of whether the child was abandoned or relinquished, and when the [prospective adoptive parents ("PAPs")] were actually in Nigeria, and consistently poor record keeping at both the Ministry and this orphanage further call into question the credibility of this child's purported orphanhood.  These concerns, coupled with the serious child trafficking and baby-racketeering problems in Imo state, as admitted by Ministry officials, means that Consulate General Lagos cannot accept the purported origins of the child as genuine and is returning the I-604s as Not Clearly Approvable.

---

[4] As explained more fully below, the Form I-600 triggers an investigation by a consular officer, or an "I-604 investigation."  *See* C.F.R. § 204.3(k)(1)–(2).  I-604 investigations must be completed in every orphan case, and can include document checks and a field investigation.  *Id.*

1  (AR 70.)

2          **3.      USCIS's Second Request for Evidence**

3          On June 7, 2021, USCIS issued its second RFE.  (AR 134–40.)  The RFE contained a

4  summary of the U.S. Consulate's I-604 report, and specifically, that the U.S. Consulate returned

5  Plaintiff's petition because "they found, among other things, serious inconsistencies and

6  discrepancies in the submitted evidence such that it found no credible evidence supports petitioners'

7  claim [that] the child is an orphan by reason of abandonment or under any other subdefinition of

8  INA [§] 101(b)(1)(F)."  (AR 136.)  The RFE listed the following inconsistencies: (1) Plaintiff and

9  her husband had provided evidence that the child was relinquished at birth by a named biological

10  mother, but a letter from the Ministry indicated the child was born to an unknown birth mother; (2) a

11  document from the Nigeria Police Force recorded the birth mother's relinquishing affidavit as dated

12  on May 8, 2019, whereas the affidavit from the birth mother, Ngozi Obijuru, was dated May 7,

13  2019; (3) a letter from the Director and the post-adoption birth certificate indicated that the child

14  was lifted from the Orphanage by Plaintiff and her husband on May 22, 2019, but this date is two

15  weeks before the issuance of the Foster Order; (4) Plaintiff's travel itinerary and passport stamps

16  show that she was not in Nigeria on May 22, 2019, and she arrived no earlier than May 30, 2019;

17  and (5) another letter from the Director showed that Love Care, and not the Ministry, placed the

18  child with Plaintiff and her husband.  (AR 136.)

19          To overcome these issues, USCIS requested that Plaintiff submit (1) the child's birth

20  certificate containing the names of the biological mother and father, or if that is not available, "an

21  explanation together with secondary evidence for proof of identity, birth parent(s), and age, as

22  required by 8 CFR 204.3(d)(1)(ii);" (2) evidence of orphanhood as defined by Section

23  101(b)(1)(F)(i) of the INA; and (3) evidence of a "full and final adoption" completed pursuant to

24  the laws of Nigeria as required by 8 C.F.R. § 204.3(d)(1)(C)(iv).  (AR 136–39.)

25          Plaintiff timely submitted evidence in response to the second RFE, including a letter from

26  the Ministry sent to the U.S. Department of Homeland Security.  (*See* AR 141–234.)  In this letter,

27  the Ministry explained that it "not only authorizes the placement of children with approved [PAPs]

28  prior to the fostering order, it recommends such action as being in the child's best interest."  (AR

4

160.)  The Ministry stated that by placing the child with Plaintiff and her husband "for a trial period prior to the court-issued fostering order," Love Care and the couple "were acting in accordance with the policies of the Ministry."  (*Id.*)  Plaintiff also provided explanations for the other discrepancies identified by USCIS, and described how no original birth certificate exists for D.A.C., so she submitted secondary evidence of the child's identity, including her passport, national identity management enrollment transaction slip, and medical record.  (AR 143–46; *see also* AR 169–94.)

### 4.    USCIS's Denial of Plaintiff's Form I-600

On January 31, 2022, USCIS denied Plaintiff's Form I-600 without prejudice.  (AR 55–60.) After summarizing all of the evidence submitted by Plaintiff, USCIS stated as follows:

> The U.S. Consulate's two not-clearly-approvable determinations includes significant discussion and commentary about the past unreliability of documents coming out of the Orphanage.  The discussion includes a past case of the Orphanage director fabricating the origin of a supposedly orphaned child while in her capacity as an official with the Ministry.  The U.S. Consulate also discusses past site visits to the Ministry and the Orphanage which revealed a significant lack of oversight by the Ministry and a lack of record-keeping by the Orphanage so severe that the Orphanage could not consistently corroborate the origins of any of its children. USCIS finds the documents you have provided to support the origins of the child and [her] orphanhood are undermined by the U.S. Consulate's reporting on in-country conditions in general and the haphazard submission of important evidence over three different filing opportunities in particular.  The evidence you provided is also called into question by its content, which betrays a lack of contemporaneous business purpose and points to after-the-fact creation of documents.  The documents most contemporaneous with the child's relinquishment consistently omit the child's name when other documents state the child was named at the orphanage and the name was used (see Exhibit N).  The same documents also tend to lack mentioning your name as the adoptive parents when that would have been highly appropriate.
>
> Moreover, the evidence submitted shows that you worked directly with the Orphanage in placing and receiving custody of the child, without involvement from the Ministry, before you had acquired a foster order or were even present in the country.  You never provided a copy of an application for adoption from you to the Ministry.  Instead, the Orphanage relates in a letter to the Ministry that the Orphanage has "screened" applications and "found" eligible parents (see Exhibit H) and otherwise relates that you were advised to visit the Ministry for other documentation and to apply to the magistrate court for proper orders (see Exhibit H, N).  Likewise, the Ministry writes in a letter to the Orphanage to be sure to send you to the Ministry to complete the necessary paperwork (see Exhibit M).  This is the lack of oversight by the Ministry described by the U.S. Consulate in its 1-604 determinations.  The result is to cast significant doubt on the origins of the child

such that USCIS finds the child's identity has not been proven by a preponderance of the evidence.

(AR 59.)

USCIS determined that the Ministry's letter to the U.S. Department of Homeland Security provided no substantive information, and the Ministry's statement that it authorizes the placement of children with approved PAPs prior to the formal fostering order constituted an "after-the-fact" justification. (AR 60.) USCIS noted that there was no explanation for why Plaintiff was not in the country at the time of placement, and the Ministry's explanation was not credible, but rather, continued to leave the child's identity in "significant doubt." (AR 60.)

**5.    Plaintiff's Form I-290B and USCIS's Denial**

On April 26, 2022, Plaintiff filed a Form I-290B ("the "Form I-290B" or the "Motion to Reconsider") as to USCIS's denial of her Form I-600. (AR 11–16.) Plaintiff submitted several documents in support of her motion, including the transcript of an interview of the Director conducted by Plaintiff's attorney in Nigeria, proof of Plaintiff's attempts to search for the birth mother, Ngozi Obijuru, on Facebook and through the newspaper, and an undated social welfare investigation report conducted by the Ministry. (AR 17–54.)

During the interview with Plaintiff's attorney, the Director clarified that the child did not leave the Orphanage on May 22, 2019, the date on which Love Care indicated she was "lifted," but instead left Love Care with the PAPs on June 6, 2019. (AR 26.) The Director explained that "lifted" meant matching PAPs with the baby, and the child was not named in the Orphanage's initial letter to the Ministry because she had not been named yet. (AR 26, 28.)

On July 12, 2022, USCIS ordered that Plaintiff's Motion to Reconsider be dismissed, and the decision to deny the Form I-600 was affirmed. (AR 1–6.) USCIS found that the evidence submitted with the motion did not overcome the grounds for denial for several reasons. (AR 4.) USCIS did not find the interview with the Director to be persuasive or probative, given that, *inter alia*, her redefining of the term "lifted" conflicted with the common meaning of the word that custody of the child was transferred to another party, and there was no corroborating evidence that the child "was merely matched, rather than physically removed from the Orphanage." (AR 4.) USCIS also noted that the social welfare investigation report conducted by the Ministry had not

been previously produced until the instant motion was filed, though it would have been responsive to the second RFE.  (AR 5.)  It appeared to USCIS that the report had been created "after the fact and submitted to fill a noted gap in the evidence." (AR 5.)  USCIS also did not consider Plaintiff's efforts to locate Ngozi Obijuru to have been conducted in good faith, as these efforts "were attempted almost three years after the child was purportedly abandoned" when it was "unlikely to yield information about the person in question."  (AR 5.)

### 6.   Plaintiff's Complaint

On September 23, 2022, Plaintiff filed a complaint in federal court against Defendant Ur M. Jaddou, Director of USCIS, seeking declaratory and injunctive relief under the Administrative Procedure Act ("APA") to set aside USCIS's denial of her petition to classify D.A.C. as her immediate relative.  (Doc. 1 ("Compl.").)  Plaintiff asserts four claims in the complaint: (1) several of USCIS's conclusions were arbitrary and capricious under the APA, 5 U.S.C. § 706(2)(A) (Compl. ¶¶ 91–106); (2) USCIS failed to act in accordance with the law by misapplying the regulatory definitions of "abandonment" and "desertion" in violation of the APA, 5 U.S.C. § 706(2)(A)[5] (Compl. ¶¶ 107–12); (3) USCIS failed to comply with regulatory disclosure requirements regarding derogatory information under 8 C.F.R. § 103.2(b)(16) (Compl. ¶¶ 113–20); and (4) USCIS abused its discretion by improperly ignoring or setting aside evidence in violation of the APA, 5 U.S.C. § 706(2)(A) (Compl. ¶¶ 121–27).

### C.   Statutory and Regulatory Framework

The INA provides that a citizen of the United States may file an application on behalf of an orphaned child adopted abroad.  8 U.S.C. §§ 1154(a)(1)(A)(i), 1101(b)(1)(F)(i).  "The application, known as the I-600 petition, requests that the orphaned child be classified as an 'immediate relative' and granted a visa to permanently reside in the United States."  *Skalka v. Kelly*, 246 F. Supp. 3d 147, 149 (D.D.C. 2017) (citing 8 U.S.C. § 1154(a)(1)(A)(i)).

The goal of the I-600 petition is to determine whether the child meets the statutory definition of an "orphan."  *Skalka*, 246 F. Supp. 3d at 150.  In relevant part, the INA defines a "child" as

---

[5] The complaint cites 5 U.S.C. § 702(2)(A) as to the second cause of action (*see* Compl. ¶ 112), but this appears to be a scrivener's error.

follows:

> [A] child, under the age of sixteen at the time a petition is filed in his behalf to accord a classification as an immediate relative under [8 U.S.C § 1151(b)], who is an orphan because of the death or disappearance of, abandonment or desertion by, or separation or loss from, both parents, or for whom the sole or surviving parent is incapable of providing the proper care and has in writing irrevocably released the child for emigration and adoption; who has been adopted abroad by a United States citizen and spouse jointly, or by an unmarried United States citizen who is at least 25 years of age, at least 1 of whom personally saw and observed the child before or during the adoption proceedings . . . .

8 U.S.C. § 1101(b)(1)(F)(i).

8 C.F.R. § 204.3 sets forth the regulatory framework for an orphaned child adopted from Nigeria, a country which is not a party to the Hague Convention, to be classified as an immediate relative for immigration purposes.  The petitioner may submit the Form I-600 to USCIS along with supporting documentation to demonstrate that the child meets the statutory definition of an orphaned child.  *See* 8 C.F.R. § 204.3(a)(1)(i)–(ii).  Such supporting documentation includes the "orphan's birth certificate, or if such a certificate is not available, an explanation together with proof of identity and age," evidence that the child is an orphan, and evidence of a full and final adoption abroad.  *See* 8 C.F.R. § 204.3(d)(1).  "The non-existence or other unavailability of required evidence creates a presumption of ineligibility."  8 C.F.R. § 103.2(b)(2)(i).

As described in *Skalka*,

> The I–600 petition triggers a consular officer to conduct what is called an I–604 investigation into the veracity of the child being orphaned (i.e., verifying documentation, researching the child's age, hometown, etc.).  By regulation, a consular officer must complete this investigation "in every orphan case," and "[d]epending on the circumstances surrounding the case, the I–604 investigation shall include, but shall not necessarily be limited to, document checks, telephonic checks, interview(s) with the natural parent(s), and/or a field investigation."  8 C.F.R. § 204.3(k)(1).  The timing of such an investigation is not specified except that it must be completed "before a[n I–600] petition is adjudicated."  *Id.*  If the consular officer conducts a favorable I–604 investigation, he may approve the I–600 petition and the adoptive parents may apply for and obtain a visa for the child.  If the officer determines the application is "not clearly approvable" based on his investigation, he refers it to the USCIS office in the jurisdiction.  8 C.F.R. § 204.3(k)(2).  The I–604 investigation form declares that if there are "allegations or indications of fraud, child buying or other non–bona fide intent" the consular officer must "attach report and results of anti-fraud investigation to Form 1–604 when complete."  The USCIS office then reviews those findings and makes a final

1   determination on the I–600 petition after providing the parents with notice and an opportunity to present contrary evidence.

2   *Skalka*, 246 F. Supp. 3d at 150.

3   ## II.   DISCUSSION

4   Plaintiff contends she is entitled to summary judgment because (1) USCIS's denial of her

5   Form I-600 was arbitrary and capricious under the APA, and (2) USCIS failed to meet its disclosure

6   obligations under 8 C.F.R. § 103.2(b)(16).  (Doc. 20 at 24–32.)  Defendant responds that denial of

7   the Form I-600 was reasonable and supported by the evidence in the record, and that the agency's

8   action is entitled to deference under the APA.  (Doc. 21 at 18–32.)  Defendant also asserts that

9   USCIS did not violate its regulatory disclosure requirements.  (*Id*. at 27–30.)

10   **A.   Summary Judgment Standard in Administrative Review**

11   "In the context of a case where a party is seeking review of an administrative decision, '[a]

12   district court is not required to resolve any factual issues when reviewing administrative

13   proceedings.'"  *Naiker v. U.S. Citizenship and Immigr. Servs.*, 352 F. Supp. 3d 1067, 1072 (W.D.

14   Wash. 2018) (citing *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985)).  Instead,

15   "[t]he function of the district court is to determine whether or not as a matter of law the evidence in

16   the administrative record permitted the agency to make the decision it did."  *US Citrus Sci. Council*

17   *v. U.S. Dep't of Agric.*, 312 F. Supp. 3d 884, 894 (E.D. Cal. 2018).  Thus, summary judgment "is an

18   appropriate mechanism for deciding the legal question of whether the agency could reasonably have

19   found the facts as it did."  *Occidental*, 753 F.2d at 770.

20   In deciding a motion for summary judgment challenging a final administrative decision

21   under the APA, "the district court's review of an agency's decision is usually limited to the

22   administrative record."  *US Citrus Sci. Council*, 312 F. Supp. 3d at 894 (citing 5 U.S.C. § 706).

23   Accordingly, "the usual 'genuine dispute of material fact' standard for summary judgment normally

24   does not apply in an APA case."  *Id.* (citing *San Joaquin River Grp. Auth. v. Nat'l Marine Fisheries*

25   *Serv.*, 819 F. Supp. 2d 1077, 1083–84 (E.D. Cal. 2011)).  "Put another way, in the context of

26   reviewing an administrative decision under the APA, there are normally no 'disputed facts that the

27   district court must resolve.'"  *Id.*  (citing *Occidental*, 753 F.2d at 769).

28   ///

1

**B.      Defendant is Entitled to Summary Judgment on Plaintiff's APA Claims (Claims One, Two, and Four)**

2

**1.      Legal Standard**

3

The APA subjects to judicial review any "final agency action for which there is no other

4

adequate remedy in a court." 5 U.S.C. § 704. Under the APA, a reviewing court "shall . . . hold

5

unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious,

6

an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This

7

"standard of review is a narrow one," demanding a "searching and careful" inquiry that assesses

8

"whether the decision was based on a consideration of the relevant factors and whether there has

9

been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402,

10

416 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). "The

11

court is not empowered to substitute its judgment for that of the agency." *Id.* Nor is the court

12

required to resolve any facts where relief is sought under the APA. *Occidental*, 753 F.2d at 769.

13

Rather, the court's task is to determine whether the evidence in the administrative record permitted

14

the agency to make the decision it did. *Id.* at 769–70.

15

In reviewing agency action, the agency's factual findings are reviewed under the substantial

16

evidence standard. *Monjaraz-Munoz v. I.NS.*, 327 F.3d 892, 895 (9th Cir. 2003), *amended by* 339

17

F.3d 1012 (9th Cir. 2003). "[S]ubstantial evidence constitutes more than a mere scintilla. It means

18

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. If

19

the evidence is susceptible of more than one rational interpretation, [the Court] must uphold [the

20

agency's] findings." *Bear Lake Watch, Inc. v. F.E.R.C.*, 324 F.3d 1071, 1076 (9th Cir. 2003).

21

Courts should not "disturb the agency's findings under this deferential standard 'unless the

22

evidence presented would *compel* a reasonable finder of fact to reach a contrary result.'" *Family*

23

*Inc. v. U.S. Citizenship and Immigr. Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006) (emphasis in

24

original). The court should uphold the agency's decision even if it is "of less than ideal clarity," so

25

long as "the agency's path may reasonably be discerned." *Northwest Motorcycle Ass'n v. U.S. Dep't*

26

*of Agric.*, 18 F.3d 1468, 1478 (9th Cir. 1994) (citing *Motor Vehicle Mfr. Ass'n v. State Farm Mutual*

27

*Ins. Co.*, 463 U.S. 29, 43 (1983)). The agency need only show "a rational connection between the

28

facts found and the choices made." *Id.* "[The court's] review is especially deferential in the context

1   of immigration policy." *Jang v. Reno*, 113 F.3d 1074, 1077 (9th Cir. 1997).

2        **2.**     **Analysis**

3        Plaintiff raises a number of challenges to USCIS's decision under the APA.  First, in Claims

4   One and Four, Plaintiff contends that USCIS improperly ignored or failed to evaluate several pieces

5   of evidence, including documentary evidence of D-A-C-'s identity and orphanhood, the Family

6   Court's Foster Order and Adoption Order, and the affidavit from Plaintiff's brother regarding the

7   origin of D-A-C-'s birth certificate.  (Compl. ¶¶ 95–99, 102–103, 124–25.)  Plaintiff asserts that

8   USCIS improperly discounted this documentary evidence based on general country conditions in

9   Nigeria and the past conduct of Love Care and the Ministry.  (Compl. ¶¶ 96, 100, 125.) She contends

10   that USCIS's failure to consider or meaningfully respond to relevant evidence constituted arbitrary

11   and capricious decision-making and an abuse of discretion.  (Compl. ¶¶ 104, 126–27.)  Second, in

12   Claims One and Two, Plaintiff contends USCIS erroneously found that Plaintiff's specific evidence

13   did not meet the regulatory definitions of abandonment or desertion.  (Compl. ¶¶ 105, 111–12.)

14        Having reviewed the administrative record in this case, the Court finds that there was a

15   rational relationship between USCIS's findings and its decision to deny Plaintiff's Form I-600.

16   Accordingly, USCIS did not violate the arbitrary and capricious standard under the APA, and

17   Defendant is entitled to summary judgment on Claims One, Two and Four.  The Court will address

18   each of Plaintiff's arguments in turn.

19           a.     <u>USCIS's Evaluation of the Evidence Was Not Arbitrary or Capricious</u>

20        Here, USCIS considered the totality of the evidence in denying Plaintiff's Form I-600 and

21   her Motion to Reconsider.  The agency's denial of Plaintiff's Form I-600 contains a summary of all

22   of the evidence that had been submitted by Plaintiff at that point in the proceedings.  (*See* AR 55–

23   59.)  USCIS then discussed four main pieces of evidence in favor of its holding: (1) the I-604

24   investigation report's findings as to past unreliability of documents coming out of the Orphanage;

25   (2) the content of the documents submitted by Plaintiff indicating "a lack of contemporaneous

26   business purpose and point[ing] to after-the-fact creation of documents;" (3) suggestions in the

27   documentary evidence that Plaintiff worked directly with the Orphanage to receive custody of the

28   child, without the involvement of the Ministry, which confirmed the lack of oversight described by

the U.S. Consulate in its I-604 determinations; (4) and multiple instances where the evidence called the child's identity into question.  (*See* AR 59–60.)  Upon denying Plaintiff's Motion to Reconsider, USCIS similarly summarized all of the evidence and found that the entirety of the evidence, including the new documents submitted by Plaintiff, did not overcome the grounds for denial of the Form I-600.  (*See* AR 1–5.)

Under the highly deferential standard applicable to reviewing the agency's action, the Court finds that the record is sufficient to support USCIS's finding that Plaintiff's Form I-600 failed to demonstrate that D.A.C. failed to meet the statutory definition of an "orphan."  USCIS showed "a rational connection between the facts found and the choices made," such that "the agency's path may reasonably be discerned."  *Northwest Motorcycle Ass'n*, 18 F.3d at 1478.

In the RFEs and in the denial of Plaintiff' Form I-600 and Motion to Reconsider, USCIS cited several inconsistencies in the evidence suggesting the creation of documents "after-the-fact," and thus, the evidence called into question the veracity of D.A.C.'s adoption.  For example, Plaintiff and her husband provided evidence that D.A.C. was relinquished at birth by a named biological mother, but a letter from the Ministry dated November 28, 2019, indicated the child was born to an unknown birth mother. (AR 136; *see* AR 282.)  USCIS also noted that the Director's "Intake Report of a Baby Girl" and post-adoption birth certificate indicated D.A.C. was lifted from the Orphanage by Plaintiff and her husband on May 22, 2019, but this date is two weeks before the Foster Order. (AR 136; *see* AR 275–79.)  The administrative record contains an affidavit from Plaintiff's brother indicating that, prior to the issuance of any order by the Family Court, he applied for the birth certificate with the names of the PAPs because he believed, in good faith, that the birth certificate was necessary for processing by the Ministry.  (AR 32.)  The birth certificate was executed that same day and listed Plaintiff and her husband as D.A.C.'s father and mother.  (AR 275.)  In a subsequent letter titled "Intake Report of a Baby Girl," the Director certified that Plaintiff and her husband fostered a baby girl whose mother brought her to Love Care.  (AR 276.)  The intake stated that the child was under the Orphanage's care until she was lifted by the couple on May 22, 2019, and there was no birth certificate for the baby.  (AR 276–77.)

USCIS  also  reasoned  that  the  documents  "most  contemporaneous  with  the  child's

relinquishment consistently omit the child's name when other documents state the child was named at the [O]rphanage and the name was used," and "[t]he same documents also tend to lack mentioning [Plaintiff and her husband's names] as the adoptive parents when that would have been highly appropriate." (AR 59–60.) USCIS also found that the Ministry's statement that it authorizes the placement of children with approved PAPs prior to the formal fostering order constituted an "after-the-fact" justification. (AR 60; *see* AR 160.) USCIS noted that the social welfare investigation report for adoption conducted by the Ministry had not been previously produced until the Motion to Reconsider was filed even though it would have been responsive to the second RFE, and it appeared that the report had been created "after the fact and submitted to fill a noted gap in the evidence." (AR 5; *see also* AR 41–43.)

USCIS also highlighted the numerous instances where it appeared Plaintiff improperly worked directly with the Orphanage, and not the Ministry, to receive custody of D.A.C., evidencing the lack of oversight identified by the U.S. Consulate in its I-604 investigation. For example, the Director's letter dated May 17, 2019, showed that Love Care, and not the Ministry, placed the child with Plaintiff and her husband. (AR 136; *see* AR 245.) USCIS also noted that Plaintiff never provided a copy of an application to the Ministry for adoption. (AR 59.) USCIS then highlighted how in a letter to the Ministry, Love Care stated it had "screened" applications and "found" eligible parents, and then the Orphanage advised Plaintiff and her husband to visit the Ministry for other documentation and to apply to the Family Court for proper orders. (*Id*. (citing AR 245).) Later, the Ministry directed the Orphanage to "ensure" that the adoptive parents be directed to the Ministry to complete the necessary paperwork. (AR 59 (citing AR 178).)

The Court cannot find that the evidence summarized above would ***compel*** a reasonable finder of fact to reach a contrary result. *Family Inc.*, 469 F.3d at 1315; *see, e.g.*, *Alabed v. Crawford*, No. 1:13–cv–2006–SKO, 2015 WL 1889289, at *15 (E.D. Cal. Apr. 24, 2015) (citing *Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir. 1997) (to reject a decision by USCIS under the substantial evidence standard, "the evidence must be so compelling that no reasonable factfinder could fail to find the facts were as the alien alleged.")). Plaintiff's contention that USCIS ignored or failed to evaluate some of the documentary evidence, and instead, relied solely on general country conditions in

Nigeria and the past conduct of Love Care and the Ministry, "is but one interpretation of the evidence." *Stoll v. U.S. Citizenship and Immigr. Servs.*, No. 1:20-cv-666-BAM, 2021 WL 780309, at *14 (E.D. Cal. Mar. 1, 2021). Here, the USCIS's decision makes clear that the agency did not rely only on Nigeria's general country conditions, but instead considered the evidence specific to D.A.C.'s fostering and adoption. Based on this evidence, USCIS found that Plaintiff did not sufficiently demonstrate that D.A.C. met the definition of an "orphan" such that she should be classified as Plaintiff's immediate relative. Even if the evidence "is susceptible of more than one rational interpretation," the Court must uphold USCIS's decision. *Bear Lake Watch, Inc.*, 324 F.3d at 1076; *see also Alabed*, 2015 WL 1889289, at *15 ("The USCIS' consideration of and its reasons for rejection of this evidence were rational, and the USCIS' decision will not be overturned.").

In her motion for summary judgment, Plaintiff contends that USCIS's adverse credibility determination regarding her submitted evidence rests on improper speculation. (Doc. 20 at 27–32.) It is up to USCIS, however, to weigh the credibility of Plaintiff's evidence against the other evidence in the record. *See Stoll*, 2021 WL 780309, at *15. USCIS considered the totality of the evidence, including the documents submitted by Plaintiff, and found that the evidence was insufficient to overcome the concerns and lack of legitimacy surrounding D.A.C.'s adoption. The agency articulated "a rational relationship between its factual findings and its decision," and thus, USCIS did not violate the arbitrary and capricious standard. *Id*. (quoting *Fence Creek Cattle Co. v. U.S. Forest Serv*., 602 F.3d 1125, 1132 (9th Cir. 2010)).

The Court also rejects Plaintiff's arguments that USCIS ignored evidence she submitted throughout the duration of the proceedings. *See, e.g*., *Singh v. Cissna*, No. 1:18-cv-00782-SKO, 2019 WL 3412324, at *7 (E.D. Cal. July 29, 2019). An agency "is not required 'to discuss each piece of evidence submitted.'" *Pirir-Boc v. Holder*, 750 F.3d 1077, 1086 (9th Cir. 2014). When the record does not clearly indicate otherwise, even "a 'general statement that [the agency] considered all the evidence before [it]' may be sufficient." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). Here, USCIS went beyond a general statement that it considered all of the evidence before it. Both in its denial of Plaintiff's Form I-600 and her Motion for Reconsideration, USCIS explicitly mentioned much of the submitted evidence and explained why it was unconvincing. (*See*

1   AR 1–6, 55–60.)  Thus, USCIS's decision was neither arbitrary nor capricious, but was instead

2   supported by substantial evidence and carefully explained.  *See, e.g., Singh*, 2019 WL 3412324, at

3   *7 ("Not only was USCIS's decision that Plaintiff Singh and Ms. Williams previously entered into

4   a sham marriage not arbitrary, it was very well supported by the evidence and thoroughly

5   explained.").

6       By asking this Court to draw different inferences from those reasonably drawn by USCIS,

7   Plaintiff misapprehends the nature of the Court's review.  *Stoll*, 2021 WL 780309, at *15.  "The

8   Court may not substitute its judgment for the reasonable judgment of the [agency], even if this Court

9   may have a different view of the evidence."  *Id.*; *see also Bear Lake Watch, Inc.*, 324 F.3d at 1076.

10  Because the administrative record reflects a rational basis for USCIS's decision, Defendants are

11  entitled to summary judgment on Plaintiff's contentions in Claims One and Four of the complaint.

12              b.    <u>USCIS's Evaluation of Whether Plaintiff's Evidence Met the Definitions of</u>
13                    <u>Desertion or Abandonment Was Not Arbitrary or Capricious</u>

14      Similarly, given the highly deferential standard of review this Court must apply in reviewing

15  USCIS's decision, the Court cannot say that the agency's finding that Plaintiff's evidence failed to

16  meet the regulatory definitions of "desertion" and "abandonment" was arbitrary or capricious.  In

17  particular, there were discrepancies in the evidence as to whether D.A.C. was abandoned, deserted,

18  or relinquished as defined by 8 C.F.R. § 204.3(b).

19                        i.    Legal Standard

20      8 C.F.R. § 204.3(b) distinguishes between "abandonment," "relinquishment," and

21  "desertion."  "Abandonment" is defined as follows:

22      Abandonment by both parents means that the parents have willfully forsaken all
        parental rights, obligations, and claims to the child, as well as all control over and
23      possession of the child, without intending to transfer, or without transferring, these
        rights to any specific person(s).  Abandonment must include not only the intention
24      to surrender all parental rights, obligations, and claims to the child, and control over
        and possession of the child, but also the actual act of surrendering such rights,
25      obligations, claims, control, and possession.
26

27  *Id*.  In contrast, "relinquishment" is defined as follows:

28      A relinquishment or release by the parents to the prospective adoptive parents or

for a specific adoption does not constitute abandonment.   Similarly, the relinquishment or release of the child by the parents to a third party for custodial care in anticipation of, or preparation for, adoption does not constitute abandonment unless the third party (such as a governmental agency, a court of competent jurisdiction, an adoption agency, or an orphanage) is authorized under the child welfare laws of the foreign-sending country to act in such a capacity.  A child who is placed temporarily in an orphanage shall not be considered to be abandoned if the parents express an intention to retrieve the child, are contributing or attempting to contribute to the support of the child, or otherwise exhibit ongoing parental interest in the child.  A child who has been given unconditionally to an orphanage shall be considered to be abandoned.

*Id.*  Lastly, the regulation sets forth the following definition for "desertion":

Desertion by both parents means that the parents have willfully forsaken their child and have refused to carry out their parental rights and obligations and that, as a result, the child has become a ward of a competent authority in accordance with the laws of the foreign-sending country.

*Id.*

ii.     Analysis

Here, there was conflicting evidence in the record as to whether D.A.C. was abandoned, deserted, or relinquished under the regulatory definitions set forth above.  Specifically, there was evidence that the child's birth mother ***relinquished*** D.A.C. into the care of the Orphanage.  For example, the birth mother, Ngozi Obijuru, executed and signed an "Affidavit of Fact" attesting that she handed over the child to Love Care, gave her consent to the Orphanage to give this child "to any suitable person or couple for the purpose of adoption," and she fully understood that the implication of giving this child to Love Care was that she had "willingly relinquished all of [her] parental rights to the [Orphanage] or anyone who may wish to adopt [the child]."  (AR 239.)  That same day, the Director submitted a letter to the Ministry indicating the presence of a baby girl that "was willingly given out to [Love Care] by the biological mother who claims that she is indigent and incapable to take care of the child."  (AR 240.)

Similarly, there was evidence suggesting D.A.C. had been ***abandoned*** or ***deserted***.  For example, the same day the birth mother executed and signed the "Affidavit of Fact," the Director titled a letter to the Ministry titled "Report to Keep Custody of an *Abandoned* Baby Girl."  (AR 240 (emphasis added).)  The Ministry then conveyed approval to the Director for Love Care to keep

custody of the "abandoned baby girl." (AR 244.)  A few months later, the Ministry issued a letter

stating D.A.C. had an "unknown birth mother" who had abandoned her at Love Care, and the only

birth certificate that existed for the child was post-adoption and listed the adoptive parents' names.

(AR 282; *see also* AR 275.)  The Ministry then issued another letter indicating the child was

willingly given up for adoption by her birth mother because adoption was in the child's best interests

(AR 283), and later found that the child was considered abandoned, orphaned, and qualified to be

adopted (AR 284).

USCIS repeatedly highlighted the inconsistencies in the evidence as to the child's identity

and its concerns regarding the legitimacy of the child's claims origins.  The agency then explained

how the conflicting evidence failed to meet the regulatory definitions of "abandonment,"

"relinquishment," and "desertion." (*See* AR 1–6, 59–60, 136–139, 235–37.)  "The non-existence or

other unavailability of required evidence creates a presumption of ineligibility."  8 C.F.R.

§ 103.2(b)(2)(i).  The agency articulated a rational relationship between its factual findings and its

decision, and these decisions were supported by substantial evidence.  "In the immigration context,

the substantial-evidence standard means that a reviewing court 'must affirm the [agency's] order

when there is such relevant evidence as reasonable minds might accept as adequate to support it,

*even if it is possible to reach a contrary result on the basis of the evidence*.'" *Zerezghi v. U.S.*

*Citizenship and Immigr. Servs.*, 955 F.3d 802, 814–15 (9th Cir. 2020) (quoting *Oropeza-Wong v.*

*Gonzales*, 406 F.3d 1135, 1147 (9th Cir. 2005)) (emphasis in original).  The Court does not find that

the evidence would compel a reasonable fact finder to reach a contrary result.  *Stoll*, 2021 WL

780309, at *15.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's

contentions in Claims One and Two of the complaint.

In sum, the Court finds Defendant is entitled to summary judgment on Plaintiff's APA claims

and proceeds to consider Plaintiff's regulatory disclosure claim.

## C.    Defendant is Entitled to Summary Judgment on Plaintiff's Regulatory Disclosure Claim (Claim Three)

Plaintiff contends that USCIS failed to meet its disclosure requirements under 8 C.F.R.

§ 103.2(b)(16), specifically, disclosure of the report of the I-604 investigation conducted by the

consular officer, which constituted derogatory information relied upon by USCIS in denying her Form I-600 petition.  (Doc. 20 at 26–27.)  Defendant responds that USCIS complied with the applicable regulations regarding the disclosure of derogatory information in this case.  (Doc. 21 at 27–30.)  Defendant emphasizes that in the second RFE, USCIS provided Plaintiff with a detailed summary of the I-604 investigation report and its findings, and contends that Plaintiff was afforded an adequate opportunity to respond.  (*Id*.)

### 1.  Legal Standard

Under 8 C.F.R. § 103.2(b)(16), "[a]n applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision."

> If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered . . .  Any explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding.

8 C.F.R. § 103.2(b)(16)(i).  A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner, except [to the extent information relied upon is classified in the interest of national security]."  8 C.F.R. § 103.2(b)(16)(ii).

Federal courts have rejected arguments that the language of section 103.2(b)(16) requires USCIS to provide petitioners with all of the evidence and documentation that forms the basis of a denial.  *See, e.g.*, *Brinklys v. Johnson*, 175 F. Supp. 3d 1338, 1353 (M.D. Fla. 2016) ("Contrary to Plaintiffs' assertions, § 103.2(b)(16) does not require USCIS to provide a petitioner with the original evidence underlying the derogatory information on which it intends to rely" where UCSIS never provided the documents at issue, but instead, merely summarized their contents); *Mangwiro v. Johnson*, 554 Fed. Appx. 255, 261 (5th Cir. 2014) ("The plain language of § 103.2(b)(16)(i) requires that USCIS 'advise[]' the petitioners whose claims are about to be denied of the 'derogatory information' that forms the basis for the denial.  As many of our sister circuits have recognized, it does not require USCIS to provide documentary evidence of the information, but only sufficient information to allow the petitioners to rebut the allegations.") (footnote omitted); *Diaz v. U.S.*

*Citizenship and Immigr. Servs.*, 499 Fed. Appx. 853, 856 (11th Cir. 2012) (USCIS complied with section 103.2(b)(16)(i) by issuing the petitioner's wife a notice of intent to deny, indicating "her petition would be denied based on the discrepancies at the interview, and specifically gave her the opportunity to provide rebuttal evidence and to explain the discrepancies."); *Ogbolumani v. Napolitano*, 557 F.3d 729, 735 (7th Cir. 2009) (section 103.2(b)(16)(i) "does not require USCIS to provide, in painstaking detail, the evidence of fraud it finds.").

## 2.    Analysis

Here, Plaintiff was aware of the inconsistencies in her submitted evidence and provided ample opportunity to address and cure the identified deficiencies.  USCIS's second RFE contained a summary of the U.S. Consulate's I-604 report, and specifically, that the U.S. Consulate returned Plaintiff's petition because "they found, among other things, serious inconsistencies and discrepancies in the submitted evidence such that it found no credible evidence supports petitioners' claim [that] the child is an orphan by reason of abandonment or under any other subdefinition of INA [§] 101(b)(1)(F)."  (AR 136.)  The RFE then listed several of these particular inconsistencies in Plaintiff's submitted evidence.  (*Id*.)  USCIS specified the additional evidence Plaintiff would have to submit in order to overcome these issues and then provided Plaintiff with a chance to submit such evidence.  (*See* AR 136–39.)

Plaintiff timely submitted evidence in response to the second RFE, including documents previously submitted, a number of new documents, and a letter brief providing explanations for the inconsistencies raised by USCIS.  (*See* AR 141–234.)  After summarizing all of Plaintiff's submitted evidence, USCIS denied her Form I-600 without prejudice.  (AR 55–60.)  In its denial, USCIS described how the evidence showed that Plaintiff "worked directly with the Orphanage in placing and receiving custody of the child, without involvement from the Ministry, before [she] acquired a foster order or [was] even present in the country."  (AR 59.)  The agency cited specific discrepancies in the evidence and explicitly explained that "[t]his is the lack of oversight by the Ministry described by the U.S. Consulate in its 1-604 determinations."  (*Id*.)  Plaintiff then filed a Motion to Reconsider and submitted additional evidence further addressing the issues raised by USCIS, including an interview of the Director conducted by Plaintiff's attorney in Nigeria and proof of her efforts to

locate D.A.C.'s birth mother.  (*See* AR 11–54.)  Accordingly, by summarizing the contents of the I-604 investigation report by the consular officer, and by affording Plaintiff the opportunity to provide rebuttal evidence and explain the discrepancies identified by the agency in the submitted evidence, USCIS adequately disclosed the derogatory information in accordance with section 103.2(b)(16).  *Brinklys*, 175 F. Supp. 3d at 1353; *Diaz*, 499 Fed. Appx. at 856.

Plaintiff contends that if she had been given an opportunity to examine the consular report, she could have confronted the Director or taken further action to address USCIS's concerns regarding the recordkeeping of D.A.C.'s custody and adoption.  (Doc. 20 at 26–27.)  The record in this case, however, indicates that even without disclosure of the I-604 investigation report, Plaintiff was afforded an opportunity to confront the Director.   Namely, Plaintiff's attorney directly questioned the Director regarding several of the inconsistencies in the evidence previously raised by USCIS.  (*See, e.g*., AR 25–26, 28.)  And throughout the course of the RFEs and the denial of her Form I-600, Plaintiff received multiple notifications regarding the discrepancies in her submitted evidence and the administrative record as a whole, which ultimately led to the denial of her Petition and Motion to Reconsider.  (*See, e.g*., AR 55–60, 134–40, 235–37.)  Therefore, by advising Plaintiff as to the derogatory information that ultimately formed the basis for the denial of her Form I-600, and by providing her with an opportunity to rebut the allegations, USCIS adequately complied with section 103.2(b)(16).

In sum, the Court finds that USCIS did not violate its disclosure requirements under section 103.2(b)(16) by failing to provide Plaintiff with the I-604 investigation report.   Accordingly, Defendant is entitled to summary judgment on Claim Three of the complaint.

### III.    CONCLUSION AND ORDER

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.    Plaintiff's Motion for Summary Judgment (Doc. 20) is **DENIED**;

2.    Defendant's Cross Motion for Summary Judgment (Doc. 21) is **GRANTED**; and

3.    The Clerk of the Court is directed to enter judgment against Plaintiff and for Defendant, and to close the file.

IT IS SO ORDERED.

Dated:   **September 7, 2023**                    /s/ *Sheila K. Oberto*

UNITED STATES MAGISTRATE JUDGE